IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GERALD BLALACK                                                                                        PLAINTIFF

v.                                              No. 4:06CV00340 SWW

SOCIAL SECURITY ADMINISTRATION                                                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The parties have submitted their appeal briefs,[1] and the issues are now joined and ready for decision.

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.[2]

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have

---

[1] Plaintiff's brief was filed on September 9, 2006, and the Commissioner's brief was filed on October 12, 2006.

[2] Plaintiff had the burden of proving his disability by establishing a physical or mental impairment lasting at least one year that prevents him from engaging in any substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

> supported a contrary outcome, or because we would have decided the case differently.

Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).

Plaintiff filed an application for DIB and SSI on December 6, 2002, alleging that he became disabled on November 7, 2002,[3] due to a broken shoulder, bruised ribs, "hurt" legs and back, lack of weight, and a sprained neck (Tr. 48-62, 168-171).[4] His claims were denied initially and upon reconsideration. Pursuant to plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) on January 6, 2004 (Tr. 252-267). Plaintiff underwent a post-hearing consultative examination on February 5, 2004 (Tr. 163-166). On May 10, 2004, David O'Neal, a vocational expert (VE), answered interrogatories submitted by the ALJ post-hearing (Tr. 20, 100-106).

Plaintiff was 38 years old on the date of the ALJ's decision (Tr. 15). He has a high school education as well as one year of college with a computer operations certificate and has past relevant work (PRW) experience as a truck driver, heavy equipment operator, and a tractor trailer operator (Tr. 15, 74, 90, 260-261).

In an opinion dated July 20, 2004, the ALJ undertook the familiar five-step analysis in determining whether plaintiff was disabled (Tr. 11-22).[5]

---

[3]On November 7, 2002, plaintiff suffered a fracture to his left clavicle and wounds to his forehead, left elbow, and knuckle when he rolled over the 18-wheeler he was driving for Conagra; his blood alcohol level was 332.5 (Tr. 114-119).

[4]Plaintiff had previously filed for benefits which were denied initially on February 22, 1993, and the records were destroyed (Tr. 77). He was insured through December 31, 2006 (Tr. 76).

[5]The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work,

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability and was insured for benefits through the date of the decision. The ALJ further found that plaintiff has a history of medically determinable impairments associated with chronic liver disease, hypertension, and status post clavicle fracture which are considered "severe," but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 15-16, 21). The ALJ acknowledged that plaintiff's subjective allegations and complaints were to be considered pursuant to the criteria set forth in Polaski v. Heckler, 739 F. 2d 1320 (8th Cir. 1984).[6] He reviewed the medical records and plaintiff's testimony from the hearing. The ALJ also relied upon O'Neal's responses to the hypothetical interrogatories posed by the ALJ. Based on the evidence, the ALJ found that plaintiff was unable to perform any of his PRW, but he had the residual functional capacity (RFC) to perform a significant range of sedentary work. Relying on the Medical-Vocational Guidelines and O'Neal's responses, the ALJ determined that there were a significant number of jobs that plaintiff could perform such as a cashier, a security guard, and a dispatcher (Tr. 19-22). Therefore, he found that plaintiff was not disabled.

Plaintiff, who was then represented by counsel, requested review of the ALJ's decision and submitted additional evidence (Tr.10, 182-251). The Appeals Council denied his request for review

---

despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520. See, Cox v. Barnhart, 345 F. 3d 606, 608 n. 1 (8th Cir. 2003).

[6]These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) other treatments for relief of pain; and (6) functional restrictions.

on January 13, 2006 (Tr. 4-6). Plaintiff filed this action on March 15, 2006, pursuant to 42 U.S.C. §405(g).

Plaintiff contends that the ALJ erred in failing to fully and fairly develop the record as the hearing testimony consists of just six pages and did not address plaintiff's functional educational level, activities of daily living and work attempts, subjective complaints, weight loss, hypertension, headaches and dizziness, nerves and mental impairment, and treating source RFC evidence. He also challenges the severity analysis which did not discuss certain of plaintiff's alleged impairments of migraine headaches, shortness of breath, dizziness, blackouts, nerve problems, "lack of wight," hurt legs, stomach pain, and tiredness.

In addition, plaintiff argues that the ALJ did not elicit sufficient testimony at the hearing in order to make an adequate determination under Polaski as not one of those factors was fully developed and the ALJ did not even list them. He continues that the ALJ never used the word "fatigue" in the decision and incorrectly focused on plaintiff's lack of treatment which misconstrued the chronology of evidence which shows no lapse in medical treatment and ignores that the Arkansas River Valley is one of the few areas in the state where there is not any form of a free health clinic.

Plaintiff further argues that the ALJ erred in finding that plaintiff was not disabled in his RFC determination, in his hypotheticals to the VE, and in using those responses as the foundation for denying benefits. Moreover, he asserts that the ALJ erred in not giving plaintiff an opportunity to retain counsel, as plaintiff had expressly requested on the records, after the consultative examiner performed cervical and lumbar x-rays; in not giving plaintiff the opportunity to object to the exhibits at the hearing; and in not explaining in legal terms the need for corroborating witness testimony as

to subjective complaints and in not calling a present family member.  Finally, plaintiff complains that the ALJ erred in not discussing a closed period of disability.

> Administrative hearings are not adversarial hearings.  Cox v. Apfel, 160 F.3d 1203, 1209 (8th Cir. 1998.)  Accordingly, the ALJ, on behalf of the Commissioner, is charged with the duty of fully and fairly developing the facts of the case.  Id.  This duty is enhanced when the claimant is without the benefit of counsel.  Id.  Where the ALJ fails to fully develop the record, this court may remand for the taking of further evidence.  Payton v. Shalala, 25 F.3d 684, 686 (8th Cir. 1994).

Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).  See also, Cox v. Astrue, ____ F.3d _____, 2007 WL 2127352, *3 (8th Cir. 2007) ("An ALJ bears a responsibility to 'develop the record fairly and fully, independent of the claimant's burden to press his case.'")(citation omitted).

Although the Commissioner has countered that plaintiff was represented by an attorney at the Appeals Council level yet has not explained why he did not provide the information or records to that body that he now claims are so vital to prove his disability thereby making no showing of unfairness or prejudice, the Court finds that the ALJ failed to sufficiently develop the record in several important areas.

The transcript of the hearing, which lasted a total of twelve minutes, consists of 12 ½ pages. The first three pages concern the ALJ advising plaintiff of his right to a lawyer or other representative at the hearing to which plaintiff responded that he did not believe any lawyer would take the case without information on his back problems and he could not afford to get a neck and lower back MRI (Tr. 254-256).  Included is the following exchange:

ALJ: Okay.  So do you want to go ahead and represent yourself?

CLMT: I guess unless there's any way you could get help to get an x-ray of your neck or lower back or anything like that because I'm broke and don't have a job and haven't been able to

work in over a year and this MRI here[7] was the only one that I could afford and I couldn't afford it really but –

ALJ: Okay. So you paid for that out of your own pocket?

CLMT: Yes, sir.

ALJ: Okay. I'm going to talk to you about that in a sec. I looked at it real briefly. What I can do, if you want – I mean, if you want to go ahead and represent yourself today, we'll have our hearing.

CLMT: Yes, sir.

ALJ: But if you want to take a postponement to go talk to Legal Aide about your case, I'll be happy to give you a postponement, too. I can tell you understand your rights to representation –

CLMT: Yes, sir.

ALJ: – and I'm sensing that you want to go ahead and represent yourself but I just want to make sure that is what you want to do?

CLMT: Yes, sir.

ALJ: Okay. All right. I got a piece of paper here that basically does over what we just talked about. So just take a look at that. If you agree to it, go ahead and sign it. All right. Thank you.

CLMT: Thank you.

ALJ: And, also, for that other form there?

CLMT: Uh-huh.

---

[7]His "T bone [phonetic]." (Brackets in the original.)

ALJ: That one. I've got a form – I'm probably going to have you looked at by a doctor who doesn't work for Social Security but we send people to specialists sometime to – when the record needs to be flushed out a little bit like yours does, so I've got a piece of paper here that basically allows me to get medical information from a doctor so if you'll go ahead and take a look at that and, if you agree to that, go ahead and sign that too. It's basically a consent to release the medical information. ****

The ALJ then inquired if plaintiff wanted a break since he appeared in pain to which plaintiff said he was use to the pain as he had been like that for over a year and then they discussed the medical records of Dr. Allison and Dr. Valley (Tr. 257-259).

After plaintiff was sworn at the hearing, the ALJ inquired about plaintiff's address, his age, his education, and if he had any employment since he had been fired due to the wreck; plaintiff stated that he had tried to work four different jobs but had not been able to do so because of the pain (Tr. 260-262). The ALJ then instructed plaintiff to tell him "whatever you think I need to know about your case." Plaintiff stated that "my neck hurts. It grinds just like there's sandpaper in there and it clicks and stuff, mainly just grinding noise." When the ALJ followed-up as to whether that had been a constant thing since the wreck, plaintiff said that getting thrown from the back of a four-wheeler four or five days after the truck wreck was "mainly what hurt me worse than anything" (Tr. 262-263). The ALJ next asked a few questions as to whether Dr. Valley and Dr. Allison were treating doctors and when plaintiff had last seen Dr. Allison (Tr. 263-264). Next, the ALJ and plaintiff had the following exchange:

ALJ: Okay. And has he prescribed any medication? Are you taking any medication?

CLMT: Yes, sir. He give me some muscle relaxers.

ALJ: Are you taking them now?

CLMT: No, sir, I can't afford them.

ALJ: I was going to say is it a financial issue?

CLMT: Yes, sir.

ALJ: Okay.

CLMT: [INAUDIBLE] Powders is about all I've been taking.

ALJ: Okay. And that's because of money of lack of money?

CLMT: Yes, sir.

ALJ: Okay. Anything else you want to tell me about this morning before I start getting this information?

CLMT: Any my lower back is real bad shape but it has been for years from catching chickens for 15 years.

ALJ: Right. Yeah. I've looked at your work history. I can see the kind of work you've done. Anything else you want to tell me about right now?

CLMT: The back of my shoulder still hurts pretty bad because I landed on it whenever I got throwed off the 4-wheeler but it's not enough really to cause me not to work. That's not the problem really.

ALJ: Okay. What about the liver problem?

CLMT: That's fine.

ALJ: That's fine.

CLMT: Yes, sir, I straightened up, going to church and –

ALJ: Okay. So you don't think that's a thing that prevents you from working?

      CLMT: No, sir.  At first, I did.  (Tr. 264-265).

Then, the ALJ and plaintiff discuss having plaintiff looked at by another doctor (Tr. 265). The ALJ stated "[s]o let me get this information and then we'll get back into it.  Okay."  (Tr. 266) The record was reopened on February 23, 2004, to admit the February 5, 2005 orthopedic examination by Dr. Hommeran (Tr. 266-267).

While the Commissioner has asserted that plaintiff's application and reconsideration documents contained detailed information about plaintiff's daily activities so there was no need to ask plaintiff about those during the hearing, the ALJ's decision is completely silent concerning plaintiff's daily activities – a factor that is required to be considered in a Polaski analysis.  The ALJ asked only a few broad, open-ended questions as to what plaintiff wanted to tell him with not very many specific follow-up inquiries.  As pointed out by plaintiff, the ALJ did not follow-up when plaintiff mentioned that he had four unsuccessful attempts to work which could have pinpointed where and how plaintiff was allegedly experiencing pain – two more Polaski factors as to the duration, frequency and intensity of the pain and precipitating and aggravating factors that were not addressed by the ALJ in his decision.  Although the ALJ does not have to explicitly discuss each Polaski factor, here the ALJ did not address even half of them.

Because the case must be remanded for proper development of the record and evaluation of the Polaski factors, the Court need not address the merits of the remaining arguments made by plaintiff.

Accordingly, the Commissioner's decision in reversed and this case is hereby remanded to the Commissioner for further proceedings consistent with this opinion.  This is a "sentence four" remand, within the meaning of 42 U.S.C. §406(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).

IT IS SO ORDERED this 3rd day of August, 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE